**LAW OFFICES OF KEVIN JENSEN, PLLC**
ATTORNEYS and COUNSELORS at LAW
3740 EAST SOUTHERN AVE.
SUITE 210
MESA, ARIZONA 85206
TELEPHONE (480) 632-7373
FACSIMILE (480) 632-8383

Kevin Jensen, State Bar No. 021524

*Attorneys for Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In Re:<br><br>RACHAEL EARL<br><br>Debtor. | **Chapter 13**<br>**NO: 2:10-bk-27333**<br><br>**MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY AND RESPONSE TO LUND CADILLAC'S MOTION FOR RECONSIDERATION** |
|---|---|

Debtor Rachael Earl, hereby moves the Court for sanctions against Lund Cadillac for violation of the Automatic Stay and responds to Movant Lund Cadillac's Motion for Reconsideration as follows.

Lund Cadillac has not shown that they are a valid creditor in this Bankruptcy. The contract filed by Lund Cadillac in the Stay Relief Motion is not the correct contract, as there is no signature anywhere on the Purchase Contract by the Earls. Debtor is confused as to the Purchase Contract and Finance Contract filed by Lund Cadillac in their Motion for Relief from Stay (Docket 29, Exhibits 1 and 2). The Purchase Contract (Exhibit 2) filed by Lund Cadillac shows a different and much lower sales price amount than the Finance Contract (Exhibit 1). In

addition, the Purchase Contract is not signed by the Debtor or her husband, Dan Earl. It is clear that the filed contract by Lund Cadillac is not the true and correct contract, as there is no signature by Mr. Earl. The filed contract shows a sales price of $62,161.92, whereas the financing contract shows a sale price of $77,753.52. The Earls question why the amounts are so vastly different on the two contracts, yet the contracts are both dated the same date, September 9, 2009.

Debtor requests the court to consider sanctions against Lund Cadillac and their counsel for several blatant violations of the Automatic Stay.

Lund Cadillac was aware of the filing of the second Chapter 13 case at least as of September 20, 2010, as they filed a Motion to Set Aside Judgment and Motion for Extension of Time to Serve based upon the fact that Debtor, Rachael Earl, was in Bankruptcy and they had been unable to obtain proper service (Movant's Exhibit B, Objection to Chapter 13 Plan and Request to Retain Jurisdiction).

Lund Cadillac's assertions that service was made prior to reinstatement are simply inaccurate. According to the docket filed by Lund Cadillac (Exhibit B), and sworn in an Affidavit by the process server, service was made on November 8, 2010, purportedly to Dan and Rachael Earl. Debtor Rachael Earl's case was reinstated on October 12, 2010, and there was an automatic stay in place at the time of service. Mr. Earl notified the process server at the time of service of the Bankruptcy Stay, at which time the process server replied, "I figured you guys had something like that in place," and proceeded to serve the paperwork despite being aware of the bankruptcy stay.

Lund Cadillac has repeatedly made collection efforts, despite the Bankruptcy stay being in place, such as having several police officers come to the Earl home to attempt to collect the

vehicle, which they also apparently have now reported stolen. On November 8, 2010, a Private Investigator named Phillip Rust of Rust Investigations placed a GPS Tracking Device on the Earl's vehicle in an attempt to assist Lund Cadillac in collecting on the alleged debt. On November 10, 2010, Mr. Rust was found underneath the Earl's vehicle searching for the device that he apparently misplaced. He then acknowledged that he was hired by Lund Cadillac to find and collect the vehicle for them, also acknowledging that they knew about the Bankruptcy filing.

The situation involving Lund Cadillac and Mr. Earl is much more complicated than Lund Cadillac would have the Court believe. Lund Cadillac makes no reference to the 2007 Cadillac Escalade trade-in of Mr. Earl's, or any sort of remedy they provided for him, other than signing a new contract, which Mr. Earl is under no obligation to do. The Earls are unsophisticated consumers that were taken advantage of by Lund Cadillac.

On September 9, 2009, Debtor's husband, Dan Earl, went to Lund Cadillac to trade in his 2007 Cadillac Escalade for another vehicle that would be under warranty. Mr. Earl spoke with Jeff Van Brow, a salesman at Lund Cadillac, who showed him the 2008 Cadillac Escalade in question. Mr. Earl also discussed contract details with Jay Bates, General Sales Manager of Lund Cadillac at the time of the alleged purchase. A contract was signed for 0% financing on the vehicle, and the contract stated that a down payment of $2300, equity in the 2007 Cadillac Escalade traded in, would go toward the purchase of the new vehicle.

Lund Cadillac alleges that there was no equity in the vehicle in their previous pleadings, although it is clearly stated in the contract that there was an equity value in the 2007 Cadillac Escalade of $2300. Mr. Van Brow then told Mr. Earl that it was a "done deal" on the cars, and allowed him to take the 2008 Escalade from the lot. Unknown to Mr. Earl at the time, Lund

Cadillac on September 18, 2009, then paid off Mr. Earl's trade-in vehicle at Solidarity Federal Credit Union, where Mr. Earl's previous auto loan had been financed.

After the 2007 Escalade had been paid off, Mr. Van Brow contacted Mr. Earl to let him know that they "couldn't do" 0% financing and proceeded to pressure Mr. Earl into signing a variety of other contracts on the vehicle at a much higher interest rate and payment. Mr. Earl on several occasions tried to return the vehicle, but both Mr. Van Brow and Mr. Bates from Lund Cadillac told him not to return the vehicle, but that he needed to sign a new contract. This is a classic case of a Spot Delivery Scam, or "Yo-yo" Car Sale as defined on the Arizona Attorney General's website, as well as being listed as the number one scam to avoid in a pamphlet entitled "Top 10 Consumer Scams-Arizona Attorney General's Red Flags and Protection Tips" (January 2009, Page 4, azag.gov):

*"A salesperson suggests you take the car home before financ- ing is approved. This practice is designed to "lock you in" to a purchase. If you take a newly purchased car home and find out later you will have to pay more than expected for financing, you should be able to get your trade-in back and return the newly purchased car (A.R.S. § 44-1371)"*

According to the Attorney General and the ARS statutes, Mr. Earl should be able to get his trade-in back upon returning the newly purchased car. The trade-in vehicle would then be an asset in the Debtor's bankruptcy.

For these reasons, Debtor requests this honorable court to deny Lund Cadillac's Motion.

DATED this 10th day of February, 2011.

**LAW OFFICES OF KEVIN JENSEN, PLLC**

By  /s/ Kevin Jensen
      Kevin Jensen
      Attorneys for Petitioners

4

**ORIGINAL** of the foregoing filed
this 10th day of February, 2011, with:

**U.S. BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**
230 North First Avenue, Suite 101
Phoenix, Arizona 85003-1727

**CLARK HILL PLC**
14850 N. Scottsdale Road, Suite 500
Scottsdale, AZ 85254


 /s/ Karen Gruninger