Darrell E. Davis, #011442
Ryan J. Lorenz, #019878
**CLARK HILL PLC**
14850 N. Scottsdale Road, Suite 500
Scottsdale, AZ  85254
Telephone:  (480) 684-1100
Facsimile:  (480) 684-1199
E-Mail:  rlorenz@clarkhill.com

Attorneys for Lund Cadillac LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RACHAEL ANNE EARL,<br><br>Debtor. | Case No.  2:10-bk-27333-SSC<br>Chapter 13<br><br>**LUND CADILLAC, LLC'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION OF AUTOMATIC STAY** |

Lund Cadillac, LLC ("Lund Cadillac") hereby responds to the Debtor's motion for sanctions for violation of the automatic stay [doc. 57].  Lund Cadillac did not commit violations of the automatic stay because:  1) the automatic stay does not apply to a vehicle which is not property of the estate and 2) the automatic stay does not apply to criminal prosecution.  This response is supported by the attached memorandum of points and authorities, the declarations of Alice Crapser [doc. 64], Ryan Lorenz [doc. 65] and Phil Rust [doc. 66], filed contemporaneously, and the record relating to Lund Cadillac's stay-lift motion [doc. 29, 53, 54, 55, 63], which are incorporated by reference.

DATED this 4 day of March 2011.

**CLARK HILL PLC**

By:    /s/ Ryan J. Lorenz
Darrell E. Davis
Ryan J. Lorenz
Attorneys for Lund Cadillac, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTS**

Lund Cadillac incorporates by reference its reply re motion for stay relief [doc. 63]. Sections I and II are reproduced in this section as follows:

Exactly one year and a half before the preliminary hearing in this matter, on September 9, 2009, Dan Earl, the Debtor's husband attempted to purchase the [2008 Cadillac Escalade, VIN 1GYFK63818R157790 ("2008 Escalade")] from Lund Cadillac. Mr. Earl could not get financing at zero percent. Lund Cadillac reduced the price of the 2008 Escalade, increased Mr. Earl's trade-in value, and raised the interest rate to 7.79%, resulting in installment payments that were $10.59 higher, to get Mr. Earl financed.

The Debtor's husband refused to sign the installment contract for approved financing. Neither the Debtor nor the Debtor's husband have any right to keep, use, possess or hold the 2008 Escalade hostage when Mr. Earl had a indisputable legal duty to return the 2008 Escalade to Lund Cadillac. […]

The Debtor's bankruptcy history is as follows:

- On March 4, 2010, Rachael Earl filed a Chapter 13 bankruptcy petition (case no. 10-05650-RJH). Lund Cadillac was not notified of the filing of this bankruptcy nor was Lund Cadillac listed as a creditor of Ms. Earl.

- On March 19, 2010, Lund Cadillac sought to replevy the 2008 Escalade from the Earls in an action filed in Maricopa County Superior Court (case no. CV2010-051308) [("Replevin Action")].

- On August 26, 2010, Ms. Earl's first bankruptcy case was dismissed.

- On August 27, 2010, Ms. Earl filed a second bankruptcy petition (this case).

- This case was dismissed by order dated September 7, 2010 [doc. 7].

- Lund Cadillac's counsel contacted the Debtor's counsel after the dismissal to ask whether the Debtor would seek reinstatement. The Debtor's counsel did not return the phone call.

- The Debtor moved to reinstate this case on October 4, 2010 [doc 14].

- This case was reinstated by order dated October 12, 2010 [doc. 22]. As with the petition, Lund Cadillac had no notice of proceedings to reinstate the case.

- On November 8, 2010, the Debtor and Mr. Earl were served with the state court summons and complaint.

- Before seeking default in state court, counsel undersigned learned that the Debtor's case had been reinstated and that a 341 meeting was scheduled for November 24, 2010.

- At the 341 meeting, the Debtor's counsel failed to appear. After a short discussion with chapter 13 trustee, Russell Brown, counsel undersigned was permitted to ask a few questions.

- The Debtor had no knowledge of where the 2008 Escalade was. The Debtor's husband, sitting next to the Debtor, was asked by the Debtor if he knew, but the Debtor's husband did not respond.

- Before concluding an examination concerning the 2008 Escalade, the trustee continued the meeting to December 1, 2010.

- The afternoon of the aborted 341 meeting, Lund Cadillac filed its motion for stay relief [doc. 29].

- At the continued 341 meeting, a week later, the Debtor still did not know where the 2008 Escalade was.

## II. ARGUMENT AND ANALYSIS

### A. The 2008 Escalade is not protected as property of the estate.

The automatic stay operates *in personam* to protect the Debtor and *in rem* to protect property of the estate. 11 U.S.C. § 362(a)(1), (6), and (8) (debtor) and 11 U.S.C. § 362(a)(2) - (5) and (7) (property of the estate). Here, Mr. Earl, who did not file jointly with the Debtor, has no standing to complain about action against him *in personam*. Rather, the only claim for stay violation concerns property.

As stated in Lund Cadillac's reply re motion for relief from automatic stay [doc. 63], the Debtor has never argued that the 2008 Escalade is property of the estate. 11

U.S.C. § 541. Where a party seeks to recover property misappropriated from it, the automatic stay does not apply. *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 932 (6th Cir. 2000). The *in rem* protection afforded by the automatic stay, under § 362(a)(3), is for property of the estate. Lund Cadillac seeks to recover its property—in which the Debtor claims no direct or community property interest.

First, Lund Cadillac did not know of the automatic stay when it filed the Replevin Action. Second, Lund Cadillac did not know of the reinstatement of this case. Where a debtor files and gets dismissed twice, and remains as such for several weeks, it is not difficult to presume that the termination of the automatic stay is permanent. Here, counsel undersigned gave the Debtor two opportunities to notify Lund Cadillac of the stay. Counsel undersigned called and sought information from Debtor's counsel. Counsel undersigned asserted that the automatic stay had terminated in a state court motion copied to the Debtor. The Debtor's counsel did not call. The Debtor did not amend her schedules to add Lund Cadillac as an interested party.

Upon both discoveries of the automatic stay (March and November 2010), Lund Cadillac backed off. Instead, Lund Cadillac filed its motion for stay relief on November 24, 2010. Neither the Debtor, the trustee, nor anyone else claimed that the stay did apply or should remain effective.

**B.     The automatic stay does not apply to criminal proceedings**

The automatic stay does not forbid an owner of property from searching for it and using legal means and investigative tools to do so. In bankruptcy, it is not unusual for a secured creditor or lessor of property to inspect its collateral/property, get an

appraisal, confirm placement of insurance or question a debtor about the property. The same thing here is all that the Debtor describes. But there is much more happening than what the Debtor portrays. The Debtor's husband is under investigation for commission of a crime.

Pursuant to 11 U.S.C. § 362(b)(1), the automatic stay does not apply to "commencement or continuation of a criminal action or proceeding against the debtor." The statute applies literally to any action related to criminal prosecution. *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000). The Ninth Circuit adhered to a highly criticized rule that a criminal proceeding that has debt collection as its underlying aim does not fall within the (b)(1) exception to the stay. *Hucke v. Oregon*, 992 F.2d 950 (9th Cir. 1993). In *Gruntz*, *Hucke* was rejected as "a doctrine difficult to apply in practice." *Gruntz,* 202 F.3d at 1085. "[A]ny criminal prosecution of the debtor is on behalf of all citizens of the state, not on behalf of the creditor." *Id.*, 202 F.3d at 1086. "In our system, so long as the prosecutor has probably cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 669 (1978).

As established in the declaration of Phil Rust, Lund Cadillac hired him to locate the 2008 Escalade. The Debtor testified under oath that she does not know where the 2008 Escalade, a $75,000 vehicle, is. Mr. Rust has used all legal means of attempting to locate the 2008 Escalade, which the Debtor does not claim to own. See, *United State v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010) (permitting the use of GPS tracking

because a person has no expectation of privacy as they drive on public roadways and are subject to surveillance by visual contact or other means). Mr. Rust has not been engaged to take the vehicle. He does not use a tow truck. He has spoken to the Earls and followed them to see if they have the 2008 Escalade, where it is, what condition it is in, how they are using it, etc.

Mr. Rust determined that the conduct of Mr. Earl was serious enough to warrant police attention. Lund Cadillac does not control the police. Lund Cadillac does not control the Maricopa County Attorney's Office. Lund Cadillac's investigator provided what he considered to be evidence of a crime.

Quite conceivably, a prosecutor may determine that Mr. Earl committed theft. Ariz. Rev. Stat. § 13-1802 ("the person knowingly[…] [c]ontrols property of another with the intent to deprive the other person of such property; […] [c]onverts for an unauthorized term or use…property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; […] [o]btains… property of another by means of any material misrepresentation with intent to deprive the other person of such property…"). A prosecutor could determine that Mr. Earl committed unlawful use of a means of transportation. Ariz. Rev. Stat. § 13-1803 ("without intent permanently to deprive, the person…[k]nowingly takes unauthorized control over another person's means of transportation"). Mr. Earl could be charged with theft of a means of transportation. Ariz. Rev. Stat. § 13-1814 (permutation of Ariz. Rev. Stat. §§ 13-1802 and 13-1803). A prosecutor could charge Mr. Earl with fraudulent schemes and artifices. Ariz. Rev. Stat. § 13-2310.

Lund Cadillac did not have "several police officers come to the Earl home to attempt to collect the vehicle" as the Debtor contends. Mr. Earl brought that attention to himself—not Lund Cadillac. As a part of a criminal investigation, which is now in the hands of a prosecutor, the investigation by Mr. Rust is a part of a criminal proceeding, which is not subject to the automatic stay. *Gruntz, supra.*

## IV. CONCLUSION

Lund Cadillac did not violate the automatic stay. The Debtor did not notify Lund Cadillac of the case nor its reinstatement, despite plenty of opportunity. As to the actions of Lund Cadillac's investigator, Mr. Rust's attempts to locate the 2008 Escalade and reporting a crime are not forbidden by the automatic stay.

DATED this 4 day of March 2011.

**CLARK HILL PLC**

 /s/ Ryan J. Lorenz
By Ryan J. Lorenz
Attorney for Lund Cadillac, LLC

**COPY** of the foregoing mailed
this 4th day of March 2011, to:

Kevin Jensen
3740 E. Southern Ave., Ste. 210
Mesa, AZ 85206
Attorney for Debtor

Russell Brown
3838 N. Central Ave., Suite 800
Phoenix, AZ 85012
Chapter 13 Trustee

United States Trustee
230 N. 1st Ave., Ste. 204
Phoenix, AZ 85003

| | |
|---|---|
| 1 | |
| 2 | _____/s/ Pam Whitmore_____ |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |